IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TODD H. MERCER                                                                    PLAINTIFF

               v.                        Civil No. 4:15-cv-04052

SHERIFF DANNY MARTIN,
Nevada County, Arkansas;
JAILER PATRICIA FRANKLIN;
and CHIEF DEPUTY MILLER                                                         DEFENDANTS

<u>**OPINION**</u>

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis.*  The case is before me by the consent of the parties (ECF No.

31).  Currently pending before me for decision is Defendants' Motion for Summary Judgment (ECF

No. 35).  Plaintiff has responded to the Motion (ECF No. 48).  Both sides have filed reply briefs

(ECF Nos. 49 & 50).  The Motion is ready for decision.

**1.  Background**

Plaintiff is currently incarcerated in the Bossier Medium Security Facility in Plain Dealing,

Louisiana.  At the times relevant to the Complaint, Plaintiff was incarcerated in the Nevada County

Detention Center (NCDC).  While incarcerated there, Plaintiff contends his constitutional rights were

violated in the following ways: (1) Defendants were deliberately indifferent to his need for mental

healthcare; (2) he was subjected to psychological torture when held in a cell with bright lights and

a video camera that stayed on 24 hours a day; (3) he was subjected to unconstitutional conditions of

confinement; and (4) he was segregated without explanation or just cause.

Plaintiff was booked into the NCDC on July 30, 2014.  *Defendants' Exhibit* (hereinafter

*Defts' Ex.*) 1.  He remained incarcerated there until August 6, 2014.  *Id.*  A total of seven days.  *Id.*

Plaintiff was booked in by Jailer Patricia Franklin. *Defts' Ex.* 5 at ¶ 3. When he was booked in, a medical questionnaire was completed. *Defts' Ex.* 2. Plaintiff indicated he had the following medical conditions: allergies; Hepatitis C; an enlarged prostate; a damaged disc in his lower back; bi-polar disorder; post manic depression; and a personalty complex. *Id.* He stated he was not under the care of a doctor and had no medications or prescriptions. *Id.*

Plaintiff was cooperative during booking and according to Jailer Franklin gave "no indications he was experiencing mental health problems or that he needed immediate attention." *Defts' Ex.* 5 at ¶ 4. It was noted that Plaintiff should be kept separate from other prisoners because he had Hepatitis C. *Defts' Ex.* 3. Plaintiff signed the form. *Id.* Jailer Franklin states Plaintiff "knew why he was placed in a cell isolated from the general population in order to protect the other inmates from the risk of contracting hepatitis." *Defts' Ex.* 5 at ¶ 11.

According to Defendants, Plaintiff received a clean jail uniform and bedding when booked in. *Defts' Ex.* 5 at ¶ 8. His cell had been cleaned and disinfected prior to him being placed in it. *Id.* at ¶ 9. Jailer Franklin indicates that the jail is cleaned routinely and cells and mats are cleaned and disinfected by the 309[1] trustees whenever a cell or bed becomes open. *Id.* at ¶ 10.

During his stay at the NCDC, Jailer Franklin stated that, based on her personal observations, Plaintiff "never appeared to be in need of mental health care. None of the other jailers observed him appearing to need mental health care." *Defts' Ex.* 5 at ¶ 5. Sheriff Martin indicated it would be his decision to request mental health care for one of the inmates. *Defts' Ex.* 6 at ¶ 4.

---

[1] Act 309 of 1983 as amended is an inmate program operated by the Arkansas Department of Correction. The Director of the Department of Correction signs cooperative agreements with county and city officials for the purpose of providing additional space for the care and custody of State inmates on a temporary basis in detention facilities operated by counties and cities. The inmates may be used to work in and around governmental property/projects while under supervision of the sheriff or chief of police or designee.

-2-

Sheriff Martin explains that:

[u]nless the inmate is obviously in need of care, in . .. order for an inmate to receive mental health care, the inmate must initiate the mental health care process by requesting and completing a written complaint and/or request for mental health care. The completed form would be picked up from the inmate and be given to the jail nurse who would then meet with the inmate.

*Defts' Ex.* 6 at ¶ 8.  Plaintiff never requested a grievance or request form for medical or mental health care.  *Defts' Ex.* 5 at ¶ 6; *Defts' Ex.* 6 at ¶¶ 7 & 9.

According to Sheriff Martin, jail uniforms are washed daily by 309 inmates and every two days each inmate receives a clean uniform.  *Defts' Ex.* 6 at ¶ 11.  Inmates are provided hygiene products and may shower in their cells whenever they choose.  *Id.* at ¶ 13.

Sheriff Martin also asserts the jail is cleaned routinely and cells and mats are cleaned and disinfected by the 309 trustees whenever a cell or bed becomes available.  *Defts' Ex.* 6 at ¶ 13. Further, Sheriff Martin indicates that "[i]nmates can clean and disinfect their own mats and cells with cleaning supplies and disinfectants furnished by the jailer upon request."  *Id.* at ¶ 14.

Plaintiff was allowed to serve interrogatories on Dr. Jody Meek, a board certified psychiatrist, of Shreveport Behavioral Health, Shreveport, Louisiana.  (ECF No. 27).  Dr. Meek's responses were received by the Court on January 27, 2016, and copies sent to the parties.  Dr. Meek reviewed Plaintiff's records covering the dates of November 2011 through April of 2012.  *Defts' Ex.* 7 at ¶ 3.

Dr. Meek only saw the Plaintiff on a single occasion on November 18, 2011, when he performed an initial psychiatric evaluation.  *Defts' Ex.* 7 at ¶ 4.  Dr. Meek diagnosed the plaintiff with bipolar disorder, generalized anxiety disorder (GAD), and poly substance dependence.  *Id.*

Dr. Meek was asked to give the general symptoms of these disorders.  *Defts' Ex.* 7 at ¶ 5.  He stated:

a.  Bipolar Disorder: mood disorder with periods of both depression/sadness and mania.  Mania is usually characterized by a mood disturbance of elevated or expansive mood lasting for days at a time.  During these times, on[e] could experience grandiosity, racing thoughts, deceased need for sleep, overly talkative or impulsivity in pleasurable activities.

b.  Generalized Anxiety Disorder: excessive worry over a number of events.  The person finds it difficult to control the worry, restlessness, difficulty concentrating, irritability, difficulty falling or staying asleep.

c.  Poly Substance Dependence--a pattern of use of 3 or more substances which the individual needs to use more in order to get the same results or have withdrawal effects if they stop the substances.  The behavioral symptoms vary depending on the substances that are being abused.

*Id.*

Dr. Meek indicated that proper medication can help with the symptoms of bipolar disorder and GAD.  *Defts' Ex.*7 at ¶ 6.  He stated that mood stabilizers are primary medication for bipolar disorder and anti-depressants have been effective in the treatment of GAD.  *Id.*  However, he noted that mood stabilizers can take 4 to 7 days to start becoming effective and antidepressants usually take 10 to 14 days to start to becoming effective.  *Id.* at ¶ 16(B).

If the Plaintiff had been self-medicating with heavy alcohol consumption and using methamphetamine, Dr. Meek indicates that coming off these substances "could certainly lead to some symptoms of depression." *Defts' Ex.* 7 at ¶ 8.  Depending on how heavy and sustained the use of alcohol and methamphetamine, "one can experience withdrawal symptoms of hallucinations" although he noted these would occur within twenty-four to forty-eight hours after the last use.  *Id.*

With respect to the fact that Plaintiff was facing incarceration, Dr. Meek opined that "most people would experience 'mental anguish' when facing incarceration." *Defts' Ex.* 7 at ¶ 9.  However, he noted "there are those individuals who have little concern over incarceration because of

-4-

familiarity or it may offer an improved living situation." *Id.*

Dr. Meek noted that Plaintiff had reported two previous suicide attempts. *Defts' Ex.* 7 at ¶ 10.  However, Plaintiff had also reported several arrests and incarcerations including one lasting four years.  *Id.*  Dr. Meek indicated that Plaintiff's suicide attempts did not occur while he was incarcerated.  *Id.*  Given these facts, Dr. Meek indicated he could not predict whether facing incarceration would bring on thoughts of suicide in the Plaintiff.  *Id.*

Dr. Meek was asked whether Plaintiff should have been evaluated by a medical/mental health person at intake or as soon thereafter as possible given the presence of scars on his neck from a self-inflicted gunshot wound.  *Defts' Ex.* 7 at ¶ 14.  Dr. Meek responded:

> A "medical/mental health professional" evaluation is not necessary for anyone with a history os a suicide attempt.  A screening for mental health symptoms would suffice.  This would include questions about current thought of suicide or a plan.  As far as a medical evaluation of the previous suicide attempt, you stated that it was "scars" so the wound was healed.  No acute medical evaluation is needed for the previous suicide attempt.

*Id.*

When asked whether Plaintiff should have been placed on psycho-tropic medication following an evaluation, Dr. Meek stated he could not make that determination.  *Defts' Ex.* 7 at ¶ 15.  Dr. Meek stated "[t]here is no mention in the provided document of [Plaintiff's] physical presentation that the authorities witnessed to determine that [Plaintiff] needed psychotropic medication."  *Id.*  Dr. Meek noted that many of the described symptoms "could be attributed to [Plaintiff's] use/withdrawal of methamphetamine and alcohol and the situation of being arrested."  *Id.*

## 2.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a

reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins.*

*Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence

of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but

the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set

forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

      The Court must view all evidence and inferences in a light most favorable to the nonmoving

party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However,

"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380

(2007).

### 3.  Discussion

      Defendants move for summary judgment arguing that: (1) there is no basis for an official

capacity claim; (2) Plaintiff was not subjected to unconstitutional conditions of confinement; (3)

Plaintiff was not placed in solitary confinement as a means of discipline or punishment; and (4) they

were not deliberately indifferent to Plaintiff's needs for mental health treatment.

### (A).  Official Capacity Claim

      A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a

-6-

municipal policy or custom that caused the plaintiff's injury." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted).

In this case, Plaintiff has not pointed to "any officially accepted guiding principle or procedure that was constitutionally inadequate." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). "[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Id.* at 634 (internal quotation marks and citation omitted). Here, there is no genuine issue of material fact as to whether there is any widespread, persistent pattern of unconstitutional conduct that was the moving force behind the alleged constitutional violations. Defendants are entitled to summary judgment on the official capacity claims.

**(B).  Unconstitutional Conditions of Confinement**

Plaintiff contends his constitutional rights were violated because he was: given a dirty uniform when booked in; not given a clean uniform for the seven days he was incarcerated there; his mattress and blanket were in bad shape and smelled of body odor; his cell was dirty; the lights were on 24 hours a day; a video camera was pointed at him twenty-four hours a day; he had no privacy when using the toilet; and the only place he had any privacy was in the shower.

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall*

*v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same"). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (*quoting Wilson v. Sieter*, 501 U.S. 294 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1 (1992) (The objective component is "contextual and responsive to contemporary standards of decency.") (quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

Defendants have by affidavit established that: clean uniforms are given out every two days; hygiene products are provided; the jail is routinely cleaned; cells and mats are cleaned and disinfected whenever a cell or bed comes open; and inmates may request cleaning materials. Plaintiff has not provided any affidavits or other materials to dispute these statements.

Here, even if we assume that everything Plaintiff alleges is true, he has failed to state a claim

-8-

of constitutional dimension.  Plaintiff was not deprived of a single identifiable human need. Assuming Plaintiff's allegations are true, his confinement though unpleasant, was limited to seven days.  The length of time a prisoner is exposed to harsh conditions is a crucial factor.  *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989); *see also Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003).  "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Id.* (*quoting Hutto v. Finney*, 437 U.S. 678, 687 (1978)). Additionally, as Defendants correctly point out, there is noting in the summary judgment record to suggest that Plaintiff requested a change of uniform, complained about his bedding, or requested cleaning materials.  Defendants are entitled to summary judgment on this claim.

### (C).  Housing Assignment

Plaintiff argues his constitutional rights were violated when he was placed in a cell by himself due to his Hepatitis C.   He also denies having stated during booking that he needed to be kept separate from other prisoners because of Hepatitis C.

"We begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged." *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Pretrial detainees are presumed innocent and may not be punished").  Under *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), "restrictions on pretrial detainees that implicate a liberty interest protected under the Due Process Clause may not 'amount to punishment of the detainee.'" *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001).  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

-9-

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537.   In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.   "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," nor does it require showing a "least restrictive alternative." Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046.

There are clearly legitimate non-punitive reasons for placing individuals with serious health problems in a separate housing unit from other inmates. *See e.g., Brown-El v. Delo*, 969 F.2d 644,

647 (8th Cir. 1992)(detention center has a legitimate interest in segregating individual inmates from general population for non-punitive reasons, such as where there is a threat to the safety and security of the institution).   Plaintiff has presented no evidence of punitive intent on the part of the Defendants.   Detention center officials have discretion in classifying prisoners and determining where they should be housed within the facility.   *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

I note that Hepatitis C is a "viral disease that can be transmitted . . . through a blood transfusion, sharing of needles among drug users, or 'other intimate personal contact with an infected person.'"   *Rodriguez v. Johnson*, 2008 WL 2403722, *1 n.2 (S.D. Tex. June 10, 2008)(*quoting* Dorland's Illustrated Medical Dictionary 856 (31st ed. 2007)); *see also Powell v. City of Pittsfield*, 221 F. Supp. 2d 119, 147 (D. Mass. 2002)(Hepatitis C may be transmitted through the exchange of bodily fluids).   The virus "remains in the blood for years and accounts for a large percentage of cirrhosis, liver failure, and liver cancer cases."   *Downs v. Hawkeye Health Services, Inc.*, 148 F.3d 948, 949 n. 2 (8th Cir. 1998)(citation omitted).   It is permissible to segregate those with communicable diseases. *See e.g. Anderson v. Romero*, 72 F.3d 518 (7th Cir. 1995)(it is permissible, not mandatory, for prisons to segregate inmates who had tested positive for HIV); *Harris v. Thigpen*, 941 F.2d 1495, 1521 (11th Cir. 1991)(policy of segregating inmates with communicable diseases found to be designed to achieve legitimate correctional goals); *Welch v. Sheriff, Lubbock County, Tex.*, 734 F. Supp. 765, 768 (N.D. Tex. 1990)(Exposing inmates to communicable disease may violate their constitutional rights).

The decision to place Plaintiff is a single man cell was not a disciplinary matter, or punishment for the crimes he was being charged with, rather it was an administrative decision designed to protect the safety of all inmates.   Defendants are entitled to summary judgment on this

claim.

**(D).  Denial of Mental Health Treatment**

Plaintiff maintains he should have been placed on medication for bipolar disorder and GAD. It is undisputed that he brought no medication with him to the jail, stated he was not currently on medication, and indicated he was not under a doctor's care at the time having stopped going to his psychiatrist.  Plaintiff contends that because he revealed his mental health history and advised the booking officer of previous suicide attempts, he should have been evaluated by a mental health professional and placed on medication.  Plaintiff maintains he informed Jailer Franklin that he had been off his prescribed medication but had been self-medicating with drugs and alcohol.

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished."  *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989)(*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims.  *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).  The deliberate indifference standard has both an objective and a subjective component.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

"This duty to provide medical care encompasses detainees' psychiatric needs."  *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002)(citations omitted); *see also Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir.1995)("Prison staff violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious mental-health-care needs").  Obviously, a psychiatric or mental condition can constitute a serious medical need and pose a risk of serious harm.  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).  "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a

-12-

layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481 (8th Cir. 2008)(internal quotation marks and citation omitted).

To prevail on his claim, Plaintiff must demonstrate that (1) he suffered an objectively serious mental health care need; and (2) the defendant actually knew of the need but, subjectively, was deliberately indifferent to it. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). "Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011)(internal quotation marks and citation omitted).

Here, Plaintiff was not on medication when he came to the detention center.  He was not under the care of a mental health professional having last seen one in 2011.  Defendants observed nothing in his behavior to suggest he needed mental health care.  He was there such a short time it is unlikely Defendants could have arranged for him to be seen by a mental health professional.  If he was seen by a mental health professional, Dr. Meek has indicated the drugs typically prescribed for Plaintiff's conditions would take days to become effective.

Plaintiff contends Defendants should have asked additional mental health care questions. He maintains additional questions would have revealed his need for medication.  The questionnaire used coupled with the book-in report contained a number of questions designed to determine what health and mental health issues the Plaintiff had.  *Defts' Exs.* 2 & 3.  Plaintiff could have requested mental health medication and/or a mental health evaluation.  He did neither.  There is nothing in this record to suggest the Defendants' were deliberately indifferent to the Plaintiff's mental health needs.

-13-

In fact, even Dr. Meek could not say whether Plaintiff should have been prescribed medication at the times relevant to this case.  Defendants are entitled to judgment in their favor on this claim.

### 4.  Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 35) will be

**GRANTED and this CASE DISMISSED WITH PREJUDICE** by separate judgment.

DATED this 8th day of August 2016.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE